UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROBBIE MELTON,              )
                            )
        Plaintiff,           )
                            )
v.                          )      No. 1:09-CV-190
                            )
MICHAEL J. ASTRUE,          )      Judge Curtis L. Collier
Commissioner of Social Security, )
                            )
        Defendant.           )

# **MEMORANDUM**

Plaintiff Robbie Melton ("Plaintiff") brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff a period of disability and disability insurance benefits under 42 U.S.C. §§ 416(i) and 423. Plaintiff moved for judgment on the pleadings (Court File No. 6), and Defendant moved for summary judgment (Court File No. 10). The Court referred the matter to United States Magistrate Judge William B. Carter, pursuant to 28 U.S.C. § 636(b) and in accordance with Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation ("R&R") regarding Plaintiff's motion for judgment on the pleadings and Defendant's motion for summary judgment. The magistrate judge filed an R&R (Court File No. 12) recommending the decision of the Commissioner be affirmed, Defendant's motion for summary judgment be granted, and Plaintiff's motion for judgment on the pleadings be denied. Plaintiff timely filed an objection to the R&R (Court File No. 13) and the Commissioner timely filed a response to the objection (Court File No. 14). The Court concludes the Commissioner must reevaluate Plaintiff's intellectual functioning by obtaining valid IQ scores. For the following reasons, the Court will accept in part and reject in part the magistrate judge's R&R and remand this action to the Commissioner

pursuant to 42 U.S.C. § 405(g).

I.  STANDARD OF REVIEW

This Court must conduct a de novo review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's—review is limited to determining if the administrative law judge's (the "ALJ") findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is greater than a scintilla but less than a preponderance. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Brainard*, 889 F.2d at 681. If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428 (table), No. 98-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

II.  FACTUAL BACKGROUND

Plaintiff does not allege any facts are omitted from the R&R's exhaustive account of

2

Plaintiff's medical history. Therefore, this factual summary focuses solely on the evidence related to Plaintiff's objections.

### A. Administrative Proceedings

Plaintiff, who was 51 years old at the time, filed an application for Disability Insurance Benefits ("DIB") on December 13, 2005, alleging disability as of October 4, 2005 (Tr. 64-68). The Social Security Administration ("SSA") denied Plaintiff's disability claim initially and upon reconsideration (Tr. 49-51, 54-55). Following a hearing before an ALJ on the merits of her claim, Plaintiff was found to be not entitled to disability benefits (Tr. 10 - 17). The Appeals Council denied review (Tr. 1-5), and Plaintiff exhausted all of her administrative remedies. Plaintiff subsequently filed her complaint with this Court, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

### B. Medical and Occupational Evidence

In 1995, Plaintiff underwent bilateral carpal tunnel release (Tr. 129). Her symptoms returned in September 2005 (Tr. 196-198, 128-129). On October 5, 2005, Plaintiff underwent carpal tunnel release on her left side (Tr. 64-68, 128, 190-191). On October 25, 2005, Plaintiff underwent the same procedure on her right side (Tr. 188-189, 192). Although Plaintiff "noticed some improvement in her symptoms," she was concerned about the impact her work as a cook and server would have on her symptoms (Tr. 126-127). Plaintiff's treating physician recommended Plaintiff temporarily remain off work and by December 22, 2005, Plaintiff had quit her job (Tr. 124, 126-127).

On June 11, 2007, Plaintiff was evaluated by Mr. David Thompson, M.A. ("Mr. Thompson") for a psychological consultation (Tr. 118, 234-236). Plaintiff was referred to him by her attorney to determine Plaintiff's current levels of intellectual functioning and academic achievement (Tr. 118,

234). At the time of the evaluation, Plaintiff was married with two children and had two grandchildren living with her and her husband (Tr. 234).

Mr. Thompson assessed Plaintiff using the Wechsler Adult Intelligence Scale ("WAIS") and the Wide Range Achievement Test ("WRAT") (Tr. 234). According to his report, Plaintiff received (1) a verbal IQ of 58, (2) a performance IQ of 51, and (3) a full scale IQ of 51 (Tr. 235). Mr. Thompson noted Plaintiff's academic achievement levels were "commensurate with expectations base[d] on [Plaintiff's] demonstrated level of overall cognitive abilities and reveal Plaintiff is essentially illiterate" (Tr. 235). He also concluded the tests were valid and reliable and demonstrated an intellectual performance of Plaintiff in the mild range of mental retardation (Tr. 236). Mr. Thompson acknowledged, however, he did not evaluate the possibility of malingering (Tr. 118).

On October 11, 2007, Mr. David Caye, M.A. ("Mr. Caye"), a consultative psychologist, evaluated Plaintiff and administered the following tests: (1) an intake interview; (2) a clinical interview; (3) a mental status examination; (4) WAIS; (5) WRAT; and (6) Rey 15-item Test (Tr. 118, 237 - 243, 256 - 258). According to Mr. Caye's report, Plaintiff received (1) a verbal IQ of 60, (2) a performance IQ of 56, and (3) a full scale IQ of 54 (Tr. 235). However, he concluded Plaintiff's test scores were "questionable as to validity," as there were "multiple errors noted of questionable origin" (Tr. 239). For example, Mr. Caye noted "when [Plaintiff] came to the word 'city'" on the reading subtest of the WRAT, "she did not read the word, but stated 'Chattanooga'" (Tr. 239). He felt it was clear Plaintiff understood the content of the word but feigned her inability to do so (Tr. 239-234). In light of these and other responses, Mr. Caye concluded Plaintiff's test scores were invalid (Tr. 240).

Mr. Caye also found Plaintiff has a functional capacity "well above" that which would

4

normally be expected of a claimant in the "mild-to-moderate range of mental retardation" (Tr. 241). For example, while Plaintiff informed Mr. Caye she had a sixth grade education and "passed from grade to grade without learning anything," she also stated she (1) watched television three times a week; (2) went grocery shopping three times a week; (3) and completed basic household chores such as sweeping, vacuuming, laundry, and cooking (Tr. 238). Mr. Caye noted Plaintiff had maintained full-time employment for approximately seven years, driven independently, and maintained a family. In order to ascertain the validity of Plaintiff's performance on the tests, Mr. Caye used the Rey 15-item Test. The findings were "consistent with other test results, observed behavior and the interpretation of that behavior . . . nullifying her report as reliable and credible and severely impairing effective assessment of functioning in diagnostic issues" (Tr. 141).

In February 2008, Mr. Thompson reviewed Mr. Caye's report and noted neither he nor Mr. Caye performed specific adaptive functioning tests but suspected Plaintiff's scores on those types of measures would be "somewhat higher as it is evidence [] Plaintiff has adapted in many ways" (Tr. 118). He also acknowledged the results obtained by Mr. Caye on the Rey 15-item Test "would normally indicate [] [Plaintiff] was either feigning or exaggerating either visual-perceptual or memory deficits" (Tr. 118-120). Nevertheless, Mr. Thompson did not recant his conclusion Plaintiff is mildly mentally retarded (Tr. 118), and he stated his belief Plaintiff has been "winging it" - that is maintaining "apparent abilities" that were "very superficial and apt to break down at the slightest stress or threat" (Tr. 119). Although Plaintiff made twelve errors on the Rey 15-item Test, and someone making more than five or six errors is likely feigning a memory deficit, Mr. Thompson argued Plaintiff "was not sophisticated enough to feign any type of memory or other deficits" (Tr. 119).

5

C.     **The ALJ's Decision**

On June 20, 2007, an ALJ held an administrative hearing to assess Plaintiff's DIB application (Tr. 18-32).  In February 2008, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since October 4, 2005; (2) Plaintiff has three severe impairments - borderline intellectual functioning, residuals of bilateral carpal tunnel syndrome, and residuals of tarsal tunnel syndrome; (3) Plaintiff, however, does not have impairments that meet or medically equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff has the residual functioning capacity to perform unskilled light work; and (5) Plaintiff is capable of performing past relevant work as a housekeeper.  Therefore, the ALJ determined Plaintiff had not been under a disability since October 4, 2005 (Tr. 13-22).

D.     **R&R and Plaintiff's Objections**

Plaintiff filed a motion for judgment on the pleadings, and Defendant filed a motion for summary judgment. These motions were addressed by the magistrate judge. On these motions, Plaintiff argued the ALJ, at step three, erred in the evaluation of the evidence regarding Plaintiff's intellectual functioning, erred in making an assumption regarding Plaintiff's IQ scores, and inappropriately substituted his opinion for valid medical evidence. Plaintiff also argued the transcript of the hearing was incomplete and did not include testimony from the vocational expert.[1]  The magistrate judge concluded, however, the decision of the Commissioner should be affirmed.

Plaintiff, however, objects to the magistrate judge's finding in the R&R Plaintiff did not meet

---

[1] Plaintiff's counsel provided an affidavit setting forth a summary of the missing testimony (Court File No. 7-1).  Defendant conceded the vocational expert testified at the administrative hearing and did not contest the recollection of the testimony as set forth by Plaintiff (Court File No. 11 at 19).

6

her burden to show her impairment met or equaled the criteria of Listing 12.05 because (1) she did not show significant subaverage intellectual functioning during her developmental period, and (2) she did not show valid IQ scores to support a listing level impairment (Court File No. 13 at 1). Plaintiff also mentions in her objection the fact the R&R "only discusses the portion of [the] missing vocational expert testimony relating to Plaintiff's past relevant work" (*id.* at 10). Although the Court is unclear as to the scope of this objection, it briefly addresses the testimony of the expert in regards to the ALJ's finding Plaintiff suffers from borderline intellectual functioning.

## III. DISCUSSION

In order to determine whether an adult claimant is disabled, the Commissioner employs a five-step sequential evaluation: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant has functional capacity to perform work done in the past; and (5) whether the claimant can do other work that exists in a significant number of other jobs, taking into account the claimant's age, education, and work experience. 20 C.F.R. § 404.1520; *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); *Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, at *2 (6th Cir. Aug. 12, 2010). Once a claimant makes a prima facie case he cannot return to his former occupation, the burden shifts to the Commissioner to show there exists a job in the national economy which the claimant can perform. *Richardson v. Sec'y, Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Coldiron*, 2010 WL 3199693, at *3. However, if the ALJ makes an affirmative finding at any step of the inquiry, then Plaintiff will not be found disabled. *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

7

Plaintiff objects to the magistrate judge finding Plaintiff did not meet her burden under step three to show the impairment met or equaled the criteria of Listing 12.05. *See* 20 C.F.2. Pt. 404, Subpt. P, Appendix 1*,* § 12.05. The relevant portions of Listing 12.05 are as follows:

> 12.05 Mental retardation: **Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.**

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> . . .
>
> **B. A valid verbal, performance, or full scale IQ of 59 or less;**
>
> Or
>
> **C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;**
>
> Or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

*Id.* (emphasis added).

Under Listing 12.05, a claimant will be found disabled if her mental retardation is severe enough to preclude gainful activity. In other words, a claimant such as Plaintiff bears the burden of showing (1) "[s]he experiences 'significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the development period' (i.e., the diagnostic

8

description)," and (2) she has a valid verbal, performance or full scale IQ of 59 or less or "[s]he has a 'valid verbal, performance, or full scale IQ of 60 through 70,'" and "[s]he suffers from a 'physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x. 692, 697-98 (6th Cir. 2007) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05); *see also Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (determining a claimant must satisfy the criteria set forth in the introductory paragraph of Listing 12.05); *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003) (explaining the developmental period occurs before age 22). Plaintiff argues there is a lack of substantial evidence to support the ALJ's finding she does not have an impairment which meets or equals Listing 12.05.

### A.     Adaptive Functioning During Developmental Period

First, Plaintiff objects to the magistrate judge's determination Plaintiff did not demonstrate deficits in adaptive functioning during her developmental period. To establish mental retardation, as set out in the introductory paragraph of Listing 12.05, a claimant must first show deficits in adaptive functioning that arose during the developmental period. "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West*, 240 F. App'x at 698; *see Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993). Plaintiff argues none of her educational experiences, activities, or work history is "inconsistent, in themselves, with the existence of developmental deficits and are therefore legally insufficient to constitute substantial evidence supporting the ALJ's decision" (Court File No. 13 at 10). In addition, she implies it is permissible to infer the existence of such deficits during the developmental period in light of the record as a whole (*id.*). Indeed, Plaintiff is not required to present direct evidence such as IQ scores determined before age 22. *Id.*; *Foster*, 279 F.3d at 354-55. However, there must be substantial

9

evidence on the record to support a finding of developmental deficits. *Id.; cf. McPeek v. Sec'y of Health & Human Servs.*, 19 F.3d 19, 19 (6th Cir. 2004) (holding where a claimant "establishe[s] a valid IQ score within the requisite range," and there is "no empirical evidence to suggest the claimant's level of intellectual functioning has declined since her twenty-second birthday," the valid IQ scores determined at claimant's current age are sufficient to establish a deficit in adaptive functioning during her developmental period; however, such scores are no longer sufficient when claimant reaches age 50 to 60 or older when changes in mental ability or intellect do manifest themselves).

Plaintiff argues even without direct evidence of her level of functioning prior to age 22, evidence on the record supports a finding of developmental deficits. As evidence, Plaintiff cites her educational experiences. Although Plaintiff did not participate in special education programming because such classes did not exist at the time, she only completed the sixth grade and never learned to "read, write, add or subtract" (Tr. 21). In addition, Plaintiff argues she can only perform "relatively uncomplicated tasks" such as housekeeping and cooking, which demonstrates her degree of adaptive functioning (Court File No. 13). Plaintiff cannot pay bills, and she relies on her husband for certain tasks (Tr. 21-25). In contrast, the ALJ stated, "[Plaintiff's] work activity, as well as daily living activities including grocery shopping, daily sweeping, vacuuming, doing laundry, cooking, and raising children suggest greater functional capabilities than implied by the IQ scores and a finding of mild mental retardation" (Tr. 14).

The Court finds Plaintiff's current abilities are not inconsistent with her claimed impairment. Nonetheless, the ALJ did not specifically address whether evidence on the record supports a finding of developmental deficiencies (*See* Tr. 14-15). Therefore, whether Plaintiff's impairments meet or

equal Listing 12.05 hinges on the validity of her IQ scores.

B.  **Verbal, Performance, or Full Scale IQ Scores**

Plaintiff also objects to the magistrate judge's finding she did not show valid IQ scores to support a listing level impairment. The ALJ found Plaintiff's impairments did not meet or equal Listing 12.05 although all of the IQ scores of record fall within the parameters of the Listing. First, the ALJ found Plaintiff did not have a valid verbal, performance, or full scale IQ scores based on the assessment of Mr. Caye (Tr. 14). Second, the ALJ inappropriately determined Plaintiff has borderline intellectual functioning but can still perform simple, unskilled work (Tr. 15).

1.  **Invalid IQ Scores**

To support the finding Plaintiff does not have valid IQ scores, the ALJ gave the greatest weight to the opinion of Mr. Caye rather than Mr. Thompson (Tr. 14). The magistrate judge found there was substantial evidence in the record to support this decision and the Court agrees.

When the ALJ gives more weight to the opinion of one examiner over another, the ALJ must provide "good reason" for deciding one opinion deserves more weight. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); *Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531, at *4 (6th Cir. June 7, 2010). Here, the ALJ provided sufficient explanation for weighing Mr. Caye's assessments more heavily. He noted in his opinion Mr. Caye's assessment, unlike Mr. Thompson's assessment, included a measure of possible malingering (Tr. 14, 118). The results of this evaluation showed Plaintiff was feigning her symptoms and thus invalidating the results of her IQ tests (Tr. 13-15). In addition, Mr. Thompson acknowledged Plaintiff's Rey 15-item Test scores "would normally indicate [Plaintiff] was either feigning or exaggerating either visual-perceptual or memory deficits" (Tr. 118). As a result, the ALJ concluded these findings "in combination with

[Plaintiff's] successful work history and daily activities, suggest greater functional capabilities than suggested by [Mr.] Thompson" (Tr. 14-15).

Although Plaintiff argues her scores "are actually more a confirmation of her mental retardation than a basis for diagnosing malingering," and the scores from Mr. Thompson and Mr. Caye's tests are consistent (Court File No. 13 at 2), the ALJ found Mr. Caye's assessment to be more consistent with evidence on the entire record. In addition, the ALJ considered both Mr. Thompson and Mr. Caye's reports and the record as a whole before he decided to credit Mr. Caye's findings. At no point did he simply ignore the findings of Mr. Thompson. Therefore, the ALJ had sufficient reason to credit Mr. Caye's assessment and to find both sets of IQ scores were invalid. *See e.g., Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 568 (6th Cir. 2009).

### 2. Failure to Equal Listing Impairment

The fact the ALJ found the results of the IQ testing were invalid, however, does not mean Plaintiff's real IQ scores are not within the required range of Listing 12.05. Here, the ALJ inappropriately substituted his opinion for medical evidence by finding Plaintiff likely demonstrates "borderline intellectual functioning" (Tr. 15). "Borderline intellectual functioning describes an IQ range that is higher than that for mental retardation (generally 71-84)"; however, "it is possible to diagnose mental retardation in individuals with IQ scores between 71 and 75 if they have significant deficits in adaptive behavior." *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR), 48 (4th ed. 2000). The Court finds there is not substantial evidence on the record to support a finding of Plaintiff's actual IQ scores. First, although invalid, none of the scores produced from Mr. Caye or Mr. Thompson's assessments suggests the actual range of Plaintiff's IQ. Second, both parties concede the vocational expert

testified it would be reasonable to believe Plaintiff could have IQ scores in the range of 50 to 60 and still perform simple, unskilled work (Court File Nos. 7-1, 11). Therefore, the Court finds the ALJ erred in his assumption.

Under sentence four of 42 U.S.C. § 405(g), the Court may remand a case to the Commissioner for further consideration. In fact, "when an ALJ's factual findings are not supported by substantial evidence," the remedy should not be to award benefits. *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994). Rather, the appropriate course of action is to remand the action for further fact-finding. *Id.*; *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Here, the ALJ needs to obtain valid IQ scores for Plaintiff.

## IV. CONCLUSION

For the above stated reasons, the Court will **ACCEPT IN PART** and **REJECT IN PART** the magistrate judge's findings of fact, conclusions of law, and recommendations (Court File No. 12); **GRANT IN PART** Plaintiff's motion (Court File No. 6), **DENY** Defendant's motion (Court File No. 10); **REVERSE** the decision of the Commissioner of Social Security; and **REMAND** the action to the ALJ to fully develop the record by obtaining current and valid IQ scores in order to determine whether Plaintiff's impairments meet or equal Listing 12.05.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**